Donald PETRU, Plaintiff–Appellant,

v.

CITY OF BERWYN,
Defendant–Appellee.

No. 88–2279.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 10, 1989.

Decided May 1, 1989.

John L. Gubbins, Chicago, Ill., for plaintiff-appellant.

Patricia J. Hruby, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant-appellee.

Before POSNER, COFFEY and MANION, Circuit Judges.

COFFEY, Circuit Judge.

Donald Petru appeals from the district court's refusal to vacate a summary judgment order in favor of the defendant, City of Berwyn, Illinois, in a civil rights action under 42 U.S.C. § 1983, and claims that the City denied him his procedural due process rights in failing to appoint him to the position of fire fighter. We affirm.

I

Donald Petru received the highest combination of test scores for the position of fire fighter on an examination administered by the City of Berwyn Board of Fire and Police Commissioners in the fall of 1985.[1]

1. The examination consisted of a written test, a physical test and an oral interview. Each of the

Based upon the results of this examination, an eligibility list for fire fighters' positions was posted on January 17, 1986, and Petru ranked first.

The City is required to hire replacements for fire fighter vacancies from the hiring eligibility list only after receiving the approval of the mayor and the department head. Authorization to hire is provided only if there is a consensus that there is a need for a replacement and sufficient funds to pay the replacement.[2] During 1984 and 1985 the City appointed five new fire fighters within thirty days of the retirement of their predecessors. In April, May and June 1986, Fire Chief John Keating informed Mayor Joseph J. Lanzillotti that he anticipated three openings resulting from the expected retirement of three fire fighters. Ultimately, only one employee retired, with his retirement effective July 1, 1986. When Chief Keating asked Mayor Lanzillotti to authorize the hiring of fire fighters in May and June 1986, the Mayor informed the Chief that the City was at present fiscally strapped and unable to hire replacements. The Mayor's refusal to authorize the appointment of replacements for fire fighters was part of an economic austerity program that involved the refusal to approve the hiring of any full-time employees in city departments during the 1986 year. Accordingly, the City appointed no fire fighter from August 1985 through July 17, 1986. On the latter date, the City retired the eligibility list on which Petru was ranked first.

During the first part of 1986, the City's fire fighter hiring practices were also subject to a lawsuit the United States brought against the City under Title VII of the Civil Rights Act of 1964, alleging, *inter alia*, that the City's hiring eligibility lists, including those utilized by the fire department, were based upon discriminatory voter and residency requirements. During negotiations between the City and the Justice Department concerning the possible settle-

ment of this lawsuit, a Justice Department attorney informed the City's attorneys that the Justice Department expected the City to cease and desist from hiring until the entry of a consent decree. The Justice Department also stated that it would immediately move for the issuance of an injunction if the City did not agree to refrain from hiring, including fire fighters, during the course of settlement negotiations. In late March or early April 1986, the City agreed to the Justice Department's request not to hire during the course of the negotiations and reaffirmed this commitment in May 1986. In April and May 1986, the City Attorney informed various City officials, including the Mayor, of the City's commitment to refrain from any hiring during the course of negotiations. The City complied with this agreement and did not hire fire fighters between March 1986 and the July 17, 1986, entry of the consent decree between the City and the United States. The consent decree ultimately enjoined the City from using any current hiring eligibility list, in any department, on the basis that "such lists were based upon voter and residence requirements that have been eliminated by ... this decree."

The City moved for summary judgment on January 19, 1988, in Petru's civil rights suit alleging that the plaintiff-appellant lacked a property interest under state law in an appointment to a position of fire fighter, that any such interest which might exist was preempted by federal law and that any alleged deprivation was premised under color of federal, rather than state law. Petru was given until March 15, 1988, to file a response. Upon Petru's request, the trial court extended the plaintiff-appellant's time for filing his response to March 31, 1988, but Petru failed to file a response to the summary judgment motion.

On May 18, 1988, the district court entered summary judgment in the City's favor. In its decision the court noted the hiring freeze, the pending civil rights ac-

---

three sections was graded separately and, after the sections were weighted, they were averaged to calculate a combined score.

**2.** In addition, a City ordinance requires that the City have at least thirty fire fighters. There is no dispute that the City has complied with this requirement.

tion and the cancellation of the January 1986 hiring eligibility list upon the entry of the consent decree in the civil rights action. The trial court concluded that: "In these circumstances, assuming [Petru] had an enforceable right in his position on the eligibility list, it cannot be said that he was deprived of his right to due processes of law by actions of the [City]."

Petru filed a timely motion to vacate the judgment under Rule 59(e) on May 31, 1986. The district court denied the motion to vacate, ruling that "Petru was not deprived of any arguable property interest." Petru filed a notice of appeal from the order denying vacation of the summary judgment, rather than from the order granting summary judgment.

## II

■ The City contends that because the notice of appeal stated that Petru appealed from the district court's order denying his motion to vacate judgment under Federal Rule of Civil Procedure 59(e), review should be limited to this order or, if consideration of the summary judgment order be deemed proper, it should proceed under the abuse of discretion standard the City asserts is applicable to review of a district court's denial of a motion to vacate judgment under Rule 59(e). *See generally Danenberger v. Johnson,* 821 F.2d 361, 362 (7th Cir.1987) ("Danenberger argues that the trial court abused its discretion in refusing to vacate its judgment dismissing Danenberger's complaint").

We have previously held that the review of an underlying judgment will be permitted in certain cases in which an appeal is mistakenly taken from an order denying a motion for a new trial brought under Rule 59(b) rather than from the underlying judgment. We observed:

"Plaintiff's appeal from the district court's denial of her motion for a new trial is also flawed, though not fatally so. This flaw lies not with the original motion but rather with the appeal. Plaintiff appeals from an order denying her mo-

tion for a new trial, but the generally accepted rule is that the appeal should be taken from the judgment itself rather than the order denying the motion for a new trial. However, the general practice, which we have previously approved, is to treat this error as harmless and view the appeal as instead taken from the judgment, so long as (1) the judgment from which the moving party intended to appeal is final; (2) it is clear what judgment is involved; (3) the motion and appeal were timely made; and (4) there is no prejudice to the other party. In this case, all of these requirements are met, and consequently we treat this appeal as an appeal from the judgment and reach the merits of the case."

*Johnson v. University of Wisconsin—Milwaukee,* 783 F.2d 59, 61 (7th Cir.1986) (citations omitted).

There is no legal justification for treating a flawed attempt to appeal from an underlying judgment through an appeal from a denial of a motion to vacate judgment under Rule 59(e) any differently than a similarly flawed attempt to appeal from an underlying judgment through an appeal from a denial of a motion for new trial under Rule 59(b).[3] Indeed, in previous decisions under Rule 59(e) we have emphasized the unified policy underlying Rule 59: "[T]he purpose of Rule 59 is to allow the district court to correct its own errors, sparing the parties and appellate courts the burden of unnecessary appellate proceedings." *Charles v. Daley,* 799 F.2d 343, 348 (7th Cir.1986).

Treatment of this appeal in the manner we have previously treated appeals under Rule 59(b) is also consistent with the United States Supreme Court's decision in *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). In that case a party filed a notice of appeal from the judgment prior to the district court's disposition of the Rule 59(e) motion and later filed a notice of appeal from the order denying the Rule 59(e) motion. The Court of Appeals

---

**3.** Each of these appeals is "flawed" because the involved notice of appeal does not state that the appeal is taken from the underlying judgment order.

had dismissed the appeal on the basis that the second notice "failed to specify that the appeal was being taken from [the] judgment as well as from the orders denying the motions." 371 U.S. at 180–81, 83 S.Ct. at 229–30. The Supreme Court held:

> "The Court of Appeals' treatment of the motion to vacate as one under Rule 59(e) was permissible, at least as an original matter, and we will accept that characterization here. Even if this made the first notice of appeal premature, we must nevertheless reverse for we believe the Court of Appeals to have been in error in so narrowly reading the second notice.
>
> The defect in the second notice of appeal did not mislead or prejudice the respondent. With both notices of appeal before it (even granting the asserted ineffectiveness of the first), the Court of Appeals should have treated the appeal from the denial of the motion as an effective, although inept, attempt to appeal from the judgment sought to be vacated. Taking the two notices and the appeal papers together, petitioner's intention to seek review of both the dismissal and the denial of the motions was manifest. Not only did both parties brief and argue the merits of the earlier judgment on appeal, but petitioner's statement of points on which she intended to rely on appeal, submitted to both respondent and the court pursuant to rule, similarly demonstrated the intent to challenge the dismissal."

371 U.S. at 181, 83 S.Ct. at 229.

Applying the test set out in *Johnson*, 783 F.2d at 61, this appeal must be treated as taken from the district court's judgment. At the time of appeal the court's summary judgment order was final. It is clear from Petru's arguments on appeal that the summary judgment order is the order with which he is concerned. Both Petru's motion to vacate the judgment under Rule

59(e) and his appeal were timely filed. Finally, the fact that the City comprehensively discussed the merits of the summary judgment issue in its brief and at oral argument means that the City cannot claim surprise or other prejudice from our review of this case as an appeal from the district court's summary judgment order. Accordingly, we treat Petru's appeal from the denial of the motion to vacate judgment under Rule 59(e) "as harmless [error] and view the appeal as instead taken from the judgment." *Johnson*, 783 F.2d at 61.

### III

■ "Once a party files a motion for summary judgment showing within its four corners entitlement to prevail, judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial.' " *Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir.1989) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). "In order to assert a violation of the Fourteenth Amendment, [Petru] must first demonstrate that he has a protectable property interest in his employment." *Farmer v. Lane*, 864 F.2d 473, 478 (7th Cir.1988). Thus, a property interest in appointment as a fire fighter is an essential element of Petru's due process case and he bears the burden of proof.[4]

"[W]hen confronted with a motion for summary judgment, a party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir.1988) (emphasis in original). When, as in this case, a party fails to even file an answer and thus does nothing to

---

**4.** The district court's order entering summary judgment against Petru was based on the rationale that assuming *arguendo* Petru might have a property interest in a position on the fire fighters' hiring eligibility list, "it cannot be said that [Petru] was deprived of his right to due processes of law by actions of the defendant."

However, it is well settled that "[a]lthough [the district] court did not reach them, grounds preserved in the district court may be urged here, without a cross-appeal, to sustain the judgment." *Herman v. City of Chicago*, 870 F.2d 400, 403 (7th Cir.1989).

resist the motion for summary judgment in the district court, the court is not required to perform the lawyer's work for him. As we observed in a recent case in which the same attorney now representing Petru had also failed to file a response to a motion for summary judgment:

"A district court need not scour the record to make the case of a party who does nothing. Indeed, under the rules of the Northern District of Illinois, depositions and other materials are not in the record until introduced by a party. The materials [John Gubbins, attorney in that case and Petru's attorney in this case] now says the district court should have hunted up were not in the record then and are not there now. *Henn v. National Geographic Society*, 819 F.2d 824, 831 (7th Cir.1987). A lawyer has an ethical obligation, enforceable under Rule 11, not to seek summary judgment if the facts show that his client is not entitled to that relief, *see Goka v. Bobbitt*, 862 F.2d 646, 650–51 (7th Cir.1988), but courts will not discover that the movant slighted contrary information if opposing lawyers sit on their haunches; judges may let the adversary system take its course."

*Herman*, at 404.

■ In addressing the question of whether a public employee possessed a property right in a particular position, we have previously stated that:

"A useful starting point in determining whether Common possessed a constitutionally protected 'property' interest in continued employment is the United States Supreme Court's decision in *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), which explained:

'To have a property interest in a benefit, a person must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

\* \* \* \* \* \*

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings from an independent source such as state law—rules or understandings that secure benefits and that support claims of entitlement to those benefits.'

'[P]roperty interests may be a matter of statutory entitlement,' or 'they may also arise from mutually explicit understandings.' *Davis v. City of Chicago*, 841 F.2d 186, 188 (7th Cir.1988) (citations omitted)."

*Common v. Williams*, 859 F.2d 467, 470 (7th Cir.1988).

To recognize a "property" interest for an appointment to a classified position in the realm of public employment would drastically extend the scope of the due process clause and we refuse to make that extension. *See generally United States v. City of Chicago*, 798 F.2d 969, 974 (7th Cir. 1986), *cert. denied*, —— U.S. ——, 108 S.Ct. 771, 98 L.Ed.2d 858 (1988) ("We need not decide now whether an unconditional agreement for prospective employment gives rise to a protectable property right (all the cases cited by appellants concern the right to *continued* employment)") (citation omitted, emphasis in original). *Cf. United States v. City of Chicago*, 869 F.2d 1033, 1038 (7th Cir.1989) ("*[T]he message from Bigby and under Illinois law is clear: a roster ranking may create an expectation of promotion, but an officer has no entitlement to a particular roster position or to promotion*") (emphasis added); *Thomas v. Board of Examiners*, 866 F.2d 225, 227 (7th Cir.1989) (per curiam) ("Thomas clearly has no property entitlement to the promotion"); *Bigby v. City of Chicago*, 766 F.2d 1053, 1056 (7th Cir.1985), *cert. denied*, 474 U.S. 1056, 106 S.Ct. 793, 88 L.Ed.2d 771 (1986) ("[T]hese sergeants did not have a property interest in the rank, which they had not yet attained, of lieutenant"); *Webster v. Redmond*, 599 F.2d 793, 801 (7th Cir.1979), *cert. denied*, 444 U.S. 1039, 100 S.Ct. 712, 62 L.Ed.2d 674 (1980) ("There is ... no indication in Illinois law that possession of a certificate from the Board of Examiners means anything more

than that one is to be placed on the eligibility list and considered at the appropriate time by the Board of Education. Claims of entitlement to promotion sufficient to evoke constitutional protection must be based on a surer footing") (footnote omitted). Petru cites three sources for his alleged property interest in appointment to a position as a City fire fighter, the Illinois Municipal Code, Ill.Rev.Stat. ch. 24 ¶ 10–2.1–1 *et seq.*, the collective bargaining agreement between the City and Local 506 I.A.F.F., and the customs and practices of the City with respect to hiring fire fighters.

The Illinois Municipal Code only sets forth procedures for an eligibility register to determine "preference in certification and appointment" to fire fighter positions. Ill.Rev.Stat. ch. 24, ¶ 10–2.1–9. Although the Code specifies the candidate to be appointed to a position when an appointment is made, it does not oblige a City to make an appointment at any particular time. Indeed, Illinois cases have consistently held that a City may choose whether or not it will fill a position and that a position on an eligibility list does not provide a necessary right to appointment. *See People ex rel. Hawkonsen v. Conlisk*, 119 Ill.App.2d 431, 256 N.E.2d 99, 102–03 (1970) ("[T]he Superintendent of Police, under the facts and circumstances of this case, is under no legal duty to fill vacancies for the position of sergeant merely because appropriations had been made for such officers"); *Butts v. Civil Service Commission*, 108 Ill.App. 2d 258, 246 N.E.2d 853, 856 (1969) ("Section 10–1–16 gave Butts, and other qualified veterans, the right to preferred positions on eligibility registers if requested, but certainly does not grant to anyone a vested right to a Civil Service appointment. A Civil Service position is in the nature of a public office, not a property right"). Thus, the Illinois Municipal Code is not a source for a property right to appointment as a fire fighter.

The collective bargaining agreement between the City and the fire fighter's Union

also may not be relied upon to support a property interest in this case, because the contract was not introduced as an exhibit or even cited to the district court and, thus, was never made part of the district court record. In this case, as in *Herman*, "[t]he materials Gubbins now says the district judge should have hunted up were not in the record then and are not there now." *Herman*, at 404. We may not rely upon material that has not been placed in the record as a basis for finding the genuine issue of material fact necessary to deny the City summary judgment.[5]

Finally, Petru asserts that the City's practice during 1984 and 1985 of replacing retired employees within less than thirty days of retirement has established a custom of prompt replacement that has created a mutually explicit understanding capable of giving rise to a legitimate claim of entitlement to appointment to a fire fighter's position upon the retirement of any current fire fighter.

In a case of this nature wherein a party relies upon custom or policy to demonstrate a mutually explicit understanding giving rise to a property interest

> "the Supreme Court has pointed to the analogous doctrines of 'implied contracts' arising from parties' mutual understandings and of the 'common law of a particular plant that may supplement a collective-bargaining agreement.' A party utilizing ... evidence of custom or policy to establish a mutually explicit understanding capable of giving rise to a legitimate claim of entitlement in continued employment, must demonstrate ' "an expectation ... that was legally enforceable", a mutually binding obligation.' *Upadhya v. Langenberg*, 834 F.2d 661, 665 (7th Cir.1987) (citations omitted). This expectation must be something which ' "is securely and durably yours under state (or ... federal) law, as distinct from what you hold subject to so many conditions as to make your interest

---

**5.** If this case had been tried properly, and the collective bargaining agreement had been placed in the record, we would have been required to determine whether the collective bargaining agreement provided a basis for a property interest in appointment as a fire fighter. In the absence of this question being properly before the court, we refuse to reach this issue.

meager, transitory, or uncertain." ' *Yatvin* [*v. Madison Metropolitan School District,* 840 F.2d 412, 417 (7th Cir. 1988)] (quoting *Reed v. Village of Shorewood,* 704 F.2d 943, 948 (7th Cir.1983)). It is clear that 'a mutually subjective and unilateral expectancy is *not* protected by due process.' *Davis* [*v. City of Chicago,* 841 F.2d 186, 188 (7th Cir.1988)] (citation omitted)."

*Common,* 859 F.2d at 470 (citations omitted).

Just because the City has acted promptly in the past in filling vacancies created by retiring employees, this practice, of itself, does not create a binding legal obligation that mandates adherence to this procedure in the future. The undisputed evidence in the record demonstrates that the City replaces employees only in cases when finances are sufficient to permit an appointment and then only after the Mayor and department heads have approved the appointment. The sole limitation on the City's discretion to choose whether or not to fill a fire fighter position is the City's ordinance requiring a complement of thirty fire fighters. The City met this obligation without replacing any of the fire fighters that retired in 1986 or 1987. In this case the Mayor relied upon the City's depleted financial situation as well as the City's legal commitment to honor its agreement with the United States Department of Justice to refrain from hiring fire fighters during the course of the consent decree negotiations, as the reasons for refusing to appoint fire fighters during the time the eligibility list on which Petru was ranked first was posted. In light of the discretion accorded the Mayor to approve or disapprove the hiring of fire fighters, and the agreement with the United States Department of Justice during the relevant time period, Petru's interest in appointment to a fire fighter's position "was too contingent to count as property, which in the constitu-tional setting is 'what is securely and durably yours under state (or ... federal) law, as distinct from what you hold subject to so many conditions as to make your interests meager, transitory, or uncertain.'" *Yatvin,* 840 F.2d at 417 (quoting *Reed,* 704 F.2d at 948).

Because we are convinced that Petru has failed to demonstrate a constitutionally protectable property interest in appointment as a City fire fighter, and "[s]ince this 'property' right is an essential element of [Petru's] claim, the district court properly entered summary judgment in favor of [the City]." [6] The decision of the district court is

AFFIRMED.

---

**6.** *Common,* 859 F.2d at 473. Because we have determined that Petru has failed to demonstrate a property interest in appointment to a fire fighter position, we need not reach the questions of whether Petru's failure to secure a fire fighter position resulted from actions of the federal government rather than the City and whether a consent decree under Title VII, in which the City admitted no liability and to which Petru was not a party, can provide a basis for federal preemption of a constitutional property interest based upon state law.