**Wayne RATAJACK, Plaintiff,**

v.

**BOARD OF FIRE AND POLICE COMMISSIONERS OF CITY OF CALUMET CITY and City of Calumet City, Defendants.**

**No. 88 C 10973.**

United States District Court, N.D. Illinois, E.D.

Jan. 19, 1990.

Harry A. Schroeder, Jerry L. Lambert, Stinespring, Lambert, Schroeder & Ass., Flossmoor, Ill., for plaintiff.

William W. Kurnik, Kurnik Cipolla Stephenson & Barasha, Ltd., Arlington Hts., Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

In this lawsuit, plaintiff Wayne Ratajack, a part-time police officer for the defendant Calumet City, challenges his removal from an eligibility list for employment as a full-time police officer. The complaint is

brought pursuant to 42 U.S.C. § 1983, and it alleges that plaintiff's removal from the eligibility list constituted a denial of due process and an infringement on plaintiff's freedoms of speech and political association. Pending is defendants' motion to dismiss plaintiff's amended complaint. For the reasons described below, defendants' motion is granted in part and denied in part.

## II. FACTS

Accepting as true the facts alleged in the amended complaint, plaintiff has been employed by the Calumet City Police Department as a part-time police officer since January 2, 1985. The defendant Board of Fire and Police Commissioners ("Board") maintains a list of candidates qualified for employment as full-time police officers. Plaintiff was placed on this list on March 1, 1988, after passing written and oral examinations.

During August, 1988, the Calumet City Chief of Police informed the Board that plaintiff had failed to pass a background check and that plaintiff was not qualified for employment as a full-time police officer. On August 30, plaintiff's name was removed from the eligibility list.

During September, 1988, plaintiff demanded that the Board inform him of the reason for the removal of his name from the eligibility list or, alternatively, that the Board reinstate him on the list. On October 3, plaintiff demanded that the Board reinstate him or hold a hearing concerning the removal of his name from the list. These demands were rejected on October 12. On October 21, plaintiff renewed his demand for a hearing. The Board did not respond.

Plaintiff alleges that the reason for his removal from the list was that he was sponsored in his part-time position by a Calumet City alderman who is a political opponent of the Chief of Police.

## III. DUE PROCESS

Count I of the amended complaint alleges that plaintiff's removal from the eligibility list constitutes a violation of the due process clause of the Fourteenth Amendment to the U.S. Constitution. In order to state a claim under the due process clause, plaintiff must allege the deprivation of a property or liberty interest. *Board of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

### A. Property Interest

To determine whether plaintiff had a property interest in his place on the eligibility list, the Court must look to Illinois state law. *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. Defendants argue that Illinois law does not create a property interest in one's place on the eligibility list. They emphasize, and plaintiff does not dispute, that if plaintiff were to be hired as a full-time police officer from the eligibility list, he would become a probationary officer who could be discharged without cause and without notice or an opportunity to be heard. *See Romanik v. Board of Fire and Police Commissioners of East St. Louis*, 61 Ill.2d 422, 338 N.E.2d 397 (1975); *Doyle v. Board of Fire and Police Commissioners of the Village of Schaumburg*, 48 Ill. App.3d 449, 363 N.E.2d 79, 6 Ill.Dec. 550 (1977), *cert. denied*, 436 U.S. 941, 98 S.Ct. 2839, 56 L.Ed.2d 781 (1978). Because a probationary police officer serves at the will of his employer, he does not enjoy a property interest in that position. *See Bishop v. Wood*, 426 U.S. 341, 343–47, 96 S.Ct. 2074, 2077–78, 48 L.Ed.2d 684 (1976). Defendants complete their argument by pointing out that an applicant for an employment position can have no greater interest than has an employee who holds that position. Because a probationary police officer does not have a property interest in retaining employment, an applicant on the eligibility list can have no property interest in achieving the position of probationary police officer.

Defendants rely on several cases in support of this argument. In *Webster v. Redmond*, 599 F.2d 793 (7th Cir.1979), *cert. denied*, 444 U.S. 1039, 100 S.Ct. 712, 62 L.Ed.2d 674 (1980), the plaintiff was a schoolteacher who sought a position as a principal. He passed an examination and

received a principal's certificate. On two occasions, he was recommended by local principal nominating committees, and on both occasions the Board of Education of the City of Chicago denied him the promotion. The court noted that under the Illinois School Code, there is a three-year probationary period for newly appointed or promoted principals. During that period, principals may be dismissed without cause and without a hearing. 599 F.2d at 800. The court then stated that if the plaintiff had a property interest in appointment as a principal,

> it would mean that although the Board could have promoted Webster and then dismissed him without a hearing, the Board could not refuse to promote him without a hearing. Put differently, if Webster were to prevail on this point, it would mean that he would be entitled to a hearing if not promoted, but if promoted he would not be entitled to a hearing prior to dismissal. He would have the rights of a tenured, permanent principal before promotion but after promotion he would lose these rights for three years. A construction leading to such an absurd result cannot be correct....

*Id.*

In *Petru v. City of Berwyn,* 872 F.2d 1359 (7th Cir.1989), the plaintiff was ranked first on an eligibility list for the position of fire fighter after achieving the highest combination of test scores on an examination. The City did not hire anyone from the eligibility list—at first for financial reasons, and subsequently because of a civil rights lawsuit brought by the United States concerning the City's fire fighter hiring practices. The plaintiff argued that a property interest was created by the Illinois Municipal Code, which specifies which candidate must be appointed when an appointment is made. The court found that because the Code does not oblige a City to make an appointment at all, a position on an eligibility list does not create a right to appointment. The plaintiff, therefore, did not have a property right to appointment as a fire fighter. 872 F.2d at 1364.

In *Yatvin v. Madison Metropolitan School District,* 840 F.2d 412 (7th Cir. 1988), the plaintiff had applied for two positions with the Madison, Wisconsin school district. She alleged that she was rejected for the first position because of her gender and for the second position because she had filed sex discrimination charges concerning her rejection for the first position. The court rejected the plaintiff's due process argument for a number of reasons, among which was that she had not been deprived of property because she was not applying for a tenure appointment:

> Had she gotten the appointment and been fired the next day, she could not have complained of a deprivation of property; no more should she be allowed to complain that the failure to appoint her deprived her of property.... She claims entitlement to consideration for a job that is itself not property in the constitutional sense; and the interest in being considered for a job is even more attenuated than the interest in the job.

840 F.2d at 417.

Plaintiff relies primarily on two other cases in support of his argument that his place on the eligibility list constitutes a property interest. The Court finds that neither case supports plaintiff's position. In *United States v. City of Chicago,* 549 F.2d 415 (7th Cir.1977), the court vacated a portion of a consent decree which permitted the City of Chicago to disregard a patrolmen's eligibility roster. The court did not hold that the patrolmen enjoyed a constitutionally protected property right in their places on the list, but only that the consent decree unnecessarily interfered with the Illinois statutory scheme. 549 F.2d at 437–38. In *Del Rivero v. Cahill,* 71 Ill.App.3d 618, 623, 390 N.E.2d 355, 359, 28 Ill.Dec. 188, 192 (1st Dist.1979), the court recognized that Chicago police officers have a right to a hearing prior to removal from an eligibility roster. However, the source of this right was a provision in the Chicago Police Department Background Investigation Standards. 71 Ill.App.3d at 621, 390 N.E.2d at 358, 28 Ill.Dec. at 191. Plaintiff has not pointed to any similar provision which grants a right to hearing

before applicants are removed from the eligibility list in Calumet City.

Plaintiff also argues that his situation differs from the circumstances found in the cases relied on by defendants. He emphasizes that he has not been merely denied an appointment or promotion, but that he has been deprived of an actual benefit which he already enjoyed—his place on the eligibility list.

Plaintiff is correct that this case is factually distinguishable from the cases described above. In *Webster,* the court emphasized that the Board of Education is not required to appoint a candidate who had a valid certificate once that candidate comes to the head of the eligibility list or is nominated by a local committee. 599 F.2d at 800. Ratajack, in contrast, alleges that the Board in this case is required to make its appointments from the eligibility list. In other words, he alleges that placement on the eligibility list guarantees appointment when a position becomes available. Thus a place on the eligibility list represents a more definite benefit than did the principal's certificate and the eligibility list at issue in *Webster.*

In *Petru,* the City did not remove the plaintiff from the eligibility list, but rather ceased hiring fire fighters at all, and later ceased its use of the list. Ratajack's situation is different in that the eligibility list survives and, allegedly, continues to serve as the required source for appointments.

In *Yatvin,* the plaintiff had merely been denied appointments for which she had applied. She had not been deprived of a tangible, existing benefit such as a place on an eligibility list. Again, Ratajack's position is stronger because he does allege such a deprivation of an existing benefit.

■ Although plaintiff is thus correct in his argument that the cases cited by defendants are distinguishable on their facts, the Court finds that the legal principles expressed in those cases necessarily apply to this case as well. The case law holds loudly and clearly that when the position sought is not one which confers a property interest, one cannot retain a property interest in the steps taken toward achievement of that position. Plaintiff essentially argues that he has been "deprived" of a place on the eligibility list, and that a place on that list is an existing benefit because it is tantamount to appointment as a full-time police officer because there are no further discretionary steps in the hiring process. To phrase the argument in this way, however, is to make its deficiency obvious. Although plaintiff's status on the eligibility list may be tantamount to a full-time position, it still cannot confer on him any interest beyond that of a full-time position. If a full-time probationary police officer does not have a property interest in that position, plaintiff cannot have a property interest in his alleged right to that position.

■ Furthermore, plaintiff's claim to a property interest in his place on the eligibility list, as opposed to a claim to a property interest in the full-time position itself, is essentially a claim to a property interest in a procedure. However, there can be no property interest in procedures themselves—if there is a property interest, it must be found in the benefit toward which those procedures are aimed. *See Olim v. Wakinekona,* 461 U.S. 238, 250, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983); *Archie v. City of Racine,* 847 F.2d 1211, 1217 (7th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989); *Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073 (7th Cir.1987), *cert. dismissed,* 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988).

The Court concludes that the facts alleged by plaintiff do not support a claim for deprivation of a property interest.

*B. Liberty Interest*

■ Plaintiff alternatively argues that he was deprived of a liberty interest without due process of law. In order to state a claim for a deprivation of liberty, a government employee must allege (1) that his employment status was tangibly altered and (2) that the government employer injured his " 'good name, reputation, honor or integrity, or impose[d] a stigma that effectively forecloses' the employee's fu-

ture employment opportunities." *Ratliff v. City of Milwaukee,* 795 F.2d 612, 625 (7th Cir.1986), quoting *Roth, supra,* 424 U.S. at 573, 92 S.Ct. at 2707.

■ Assuming (without finding) that plaintiff has satisfied the first part of this test, the Court finds that he has not satisfied the second part. In order to satisfy the second part, plaintiff must allege that defendants "disseminated the stigmatizing information in a manner which would reach future potential employers of the plaintiff or the community at large." *Ratliff,* 795 F.2d at 627. The only publication alleged by plaintiff is the communication by the Chief of Police [1] to the Board that plaintiff had failed to pass a background check. Plaintiff does not allege that this publication was disseminated beyond the Board or that it was likely to reach future potential employers or the community at large. Accordingly, plaintiff has not alleged the deprivation of a liberty interest.

## IV.  FIRST AMENDMENT

■ In Count II of his amended complaint, plaintiff alleges that the removal of his name from the eligibility list violated his rights of free speech and political association pursuant to the First and Fourteenth Amendments to the U.S. Constitution. A dismissal from government employment for political reasons, with certain exceptions, violates the First Amendment. *See generally Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Tomczak v. City of Chicago,* 765 F.2d 633 (7th Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 313, 88 L.Ed.2d 289 (1985); *Conroy v. City of Chicago,* 708 F.Supp. 927, 939–43 (N.D.Ill. 1989).

■ Defendants argue that plaintiff fails to allege a claim for violation of the First Amendment because he has not suffered the "substantial equivalent of dismissal." This standard comes from *Rutan v. Republican Party of Illinois,* 868 F.2d 943 (7th Cir.), *cert. granted,* —— U.S. ——, 110 S.Ct.

48, 107 L.Ed.2d 17 (1989), in which the court held that an employee who challenges an employment action which does not rise to the level of dismissal or its equivalent does not state a claim. Plaintiff argues that the circumstances he alleges meet the *Rutan* test; defendants argue that they do not.

In *Rutan,* the court explained that its holding was based in part on the greater suffering imposed on an employee who is dismissed as opposed to an applicant who is denied an appointment, transfer or promotion:

> While we recognize that in a certain economic sense the failure to win a job may harm a person as much as the failure to keep one, we follow the plurality's approach in *Wygant v. Jackson Board of Education,* 476 U.S. 267, 106 S.Ct. 1842, 90 L.Ed.2d 260 (1986). There the plurality stated that an affirmative action plan's discriminatory effects may be justified when it involves losing future employment opportunity but not when it involves losing a present position. The plurality reasoned that losing an employment opportunity is not as intrusive as losing an existing job. *Wygant,* 476 U.S. at 279–84, 106 S.Ct. at 1849–52 (plurality); *see also Steelworkers v. Weber,* 443 U.S. 193, 208, 99 S.Ct. 2721, 2729, 61 L.Ed.2d 480 (1979). ("The [affirmative action] plan does not require the discharge of white workers and their replacement with black hires."). An employee on the job has an important stake in his position with his employer. His financial affairs and other obligations will be arranged around certain settled expectations that his paychecks will continue. The coercion and control that an employer may exercise over an employee by threat of termination is great. On the other hand, an applicant seeking employment has not arranged his affairs around any expectation of an income stream from the job he seeks. Instead of depriving him of his livelihood, a patronage system lowers his chances for receiving employment at one of many potential

---

1. The Court notes that the Chief of Police has not been named as a defendant.

employers. If he is employed elsewhere, a rejected application will probably have little effect on his income.

Likewise, absent unusual circumstances, employment decisions not involving dismissals, such as failing to transfer or promote an employee, are significantly less coercive and disruptive than discharges. While a person denied a promotion or transfer will certainly be disappointed and may remain in a lower-paying position, he still retains his job and his ability to meet his financial obligations.

868 F.2d at 952. The court also emphasized that no clear, inflexible rules apply to determine whether an employee has alleged the necessary dismissal or its equivalent:

> [M]erely failing to transfer or promote an employee is significantly less disruptive than discharging an employee. However, dismissing a complaint under Fed.R.Civ.P. 12(b)(6) is proper only if it appears beyond doubt that a plaintiff can prove no facts to support his claim. While it may be highly unlikely that a person who is merely denied a transfer or promotion can prove that the decision was the substantial equivalent of a dismissal, we cannot make this determination as a matter of law based on the minimal facts contained in the complaint.... Whether a particular employment action is equivalent to a dismissal rests upon each case's facts and circumstances.

Id. at 955.

The present case appears to fall somewhere in between the circumstances which Rutan contemplates as constituting the substantial equivalent of dismissal and those which Rutan contemplates as constituting something less than a dismissal. There is language in the passages quoted above which may support both positions in this case. If plaintiff's allegations are correct, and placement on the eligibility list leaves nothing more to be done in order to obtain a full-time position upon the creation of an opening, then removal from the list may be "as intrusive as losing an existing job," and the employee may have had reason to arrange his "financial affairs and other obligations around certain settled expectations." On the other hand, such an employee is not "losing a present position," and he has not become accustomed to the income stream of the full-time position.

In light of the court's admonishment that "dismissal ... is proper only if it appears beyond doubt that a plaintiff can prove no facts to support his claim," 868 F.2d at 954, this Court finds that dismissal of plaintiff's complaint is not warranted. Although plaintiff may ultimately be unable to demonstrate that removal from the eligibility list was the substantial equivalent of dismissal, the Court cannot so conclude as a matter of law at this stage in the proceedings. Accordingly, defendants' motion to dismiss is denied with respect to Count II.

## V. CONCLUSION

Because plaintiff has failed to allege a property or liberty interest, defendants' motion to dismiss Count I is granted. Because the Court cannot determine as a matter of law that the removal of plaintiff's name from the eligibility list was not the substantial equivalent of dismissal, defendants' motion to dismiss Count II is denied.