914 F.2d 260
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Marsha SILBERMAN, individually, as Trustee of the Sarah
Wigod Trust, and as Personal Representative of the
Estate of Sarah Wigod, Deceased,
Plaintiff-Appellee,
v.
Lee WIGOD, Sandra Wigod, and United Gold & Silver Merchants,
Defendants-Appellants.
 No. 88-3143.
 United States Court of Appeals, Seventh Circuit.
 Argued May 15, 1990.
Decided Sept. 4, 1990.
 
 1
 Before WOOD, JR., and RIPPLE, Circuit Judges, and BARBARA B. CRABB, District Judge*.
 
 ORDER
 
 2
 The plaintiff instituted this diversity action for breach of trust and fiduciary duties and sought to recover certain monies and jewelry from the defendants. The defendants appeal from the judgment of the district court against them. For the reasons stated in this order, we affirm the judgment of the district court.
 
 I. Background
 A. Facts[1]
 
 3
 Sarah Wigod placed her financial matters in the hands of her daugther, Marsha Silberman, and her daughter-in-law, Sandra Wigod.[2] From 1981 to 1982, Sarah lived in Arizona with Marsha, who provided for Sarah's care and managed most of her finances. In the Fall of 1982, Sarah moved to Lake County, Illinois to live with Sandra. In November of that year, Sarah was admitted to a health care facility in Illinois. From this time until Sarah's death in May 1984, Sandra primarily was responsible for Sarah's financial affairs.
 
 
 4
 At approximately the time she entered the health care facility, Sarah executed the Sarah Wigod Irrevocable Trust (the trust). She named Marsha and Sandra as co-trustees. At about this same time, Sandra opened an account at Uptown Federal Savings and Loan Association of Chicago in the names "Sandra Wigod and Marsha Silberman, Trustees for the Sarah Wigod Trust." R. 83, Ex. A at 1. Certain funds belonging to Sarah were subsequently deposited in this account. The account agreement required both Marsha and Sarah's signatures on all matters relating to the account.
 
 
 5
 In July 1983 Sandra withdrew $60,000 from the account on her sole signature. She directed the bank to issue a treasurer's check in that amount to United Gold & Silver Merchants (UGSM), which was owned and controlled by Lee Wigod, Sandra's son. In July and August 1984, Sarah received two refund checks from different entities and a check for interest payments from the Northern Trust Company. Lee retained all three checks, which totalled $4,952.39. In December 1984 Sandra withdrew an additional $1,582.30 from the account on her sole signature and directed the bank to issue a check in that amount to Lee Wigod Investments. In addition to these withdrawals, Sandra made approximately 115 other withdrawals from the account that Marsha does not challenge.
 
 
 6
 In June 1984 Marsha was named personal representative of the Estate of Sarah Wigod. In that capacity, she inventoried the assets of Sarah's estate and the trust. She contends that, during this process, she first learned of the withdrawals and retained funds described above. Marsha asserts that she also discovered missing certain items of jewelry Sarah had taken with her when she moved to Illinois.
 
 B. District Court Proceedings
 
 7
 On April 5, 1985, Marsha, as a co-trustee of the Sarah Wigod Trust and personal representative of Sarah's estate, instituted this diversity action against Lee, Sandra, and UGSM (collectively the Wigod defendants) in the United States District Court for the District of Arizona. Marsha sought declaratory relief, recovery of probate assets, establishment of a constructive trust, breach of fiduciary duties, breach of contract, and conversion. On October 10, 1985, the parties agreed to transfer the case to the United States District Court for the Northern District of Illinois.
 
 
 8
 In April 1987, Lee replaced his mother as co-trustee of the Sarah Wigod Trust. From September 1985 to February 1987, the Wigod defendants were represented by counsel. In January 1986, counsel filed an appearance, answer, and affirmative defenses on behalf of the Wigod defendants. Thereafter, counsel for the Wigod defendants moved to withdraw on three separate occasions. The court denied counsel's first two motions because they were based only on fee disputes. However, on February 18, 1987, the court granted counsel's renewed motion to withdraw. The Wigod defendants did not object and in fact consented to counsel's withdrawal. At the hearing on the motion, Lee advised the court that recent events had caused him to have "serious reservations" about being represented by present counsel. Tr. 3 at 4-5. He stated that the relationship "has just slid down hill so much that--our conversations are hostile." Id. at 5. Lee further indicated that the attorney-client relationship had "deteriorated" to the point that they were unable to work together. The court warned Lee that he and the other Wigod defendants were in "grave difficulty" and ran the risk of "end[ing] up with a judgment against you before long" without assistance of counsel. Id. at 9-10. Lee assured the court that he understood the consequences and the grave nature of the situation. At the conclusion of the hearing, Lee confirmed the court's understanding that he was representing himself, his family, and his corporation and that he would receive all service of process.[3]
 
 
 9
 The Wigod defendants did not employ new counsel and Lee continued to act as their representative. In March 1987, the court, on Lee's motion, extended the date for filing the pretrial materials to April 28, 1987.[4] On April 28, 1987, Lee was granted a second extension and ordered to file the pretrial materials by May 28, 1987. The final pretrial order was filed on May 28, 1987, and signed by Marsha Silberman's attorney, Lee Wigod (for himself and UGSM), and Sandra Wigod. The order specifically noted that the case would be listed on the trial calendar and the parties given three or four days notice of the trial date.
 
 
 10
 On April 25, 1988, the district court issued an order setting the case for trial on May 2, 1988. Four days before trial, the Wigod defendants moved to continue the trial for several reasons including prior commitments, lack of legal counsel, lost documents, and duress. At the hearing on this motion, Lee also stated that he would be moving out of his apartment during the trial date and that he needed additional time to find counsel to assist in filing personal bankruptcy. After noting that the case had been on the court's calendar for quite some time (approximately one year) and that the Wigod defendants had consented to their former counsel's withdrawal, the court denied the motion and indicated that the trial would begin Monday morning.
 
 
 11
 On Monday morning, May 2, 1988, the Wigod defendants failed to appear for trial. They did not contact the district court or opposing counsel. After waiting forty-five minutes, the court took under consideration the stipulated uncontested facts and stipulated exhibits. The court also heard testimony from Marsha, who had traveled from Arizona to testify. The court considered the evidence, made findings of fact, and entered conclusions of law based on the evidence presented. Judgment was entered in favor of Marsha and against the Wigod defendants in the amount of $50,534.69 plus prejudgment interest. In addition, the court ordered Lee and Sandra to return all the disputed jewelry within thirty days or the judgment would be increased to $70,634.69. The court's opinion and order specifically stated that the judgment was not based on the Wigod defendants' failure to appear for trial, but upon the evidence presented and the uncontested facts. The judgment order was entered on May 25, 1988, and expressly advised the Wigod defendants that they had ten days in which to move to vacate or amend the bill of costs and further advised them of appellate procedures.
 
 
 12
 On May 31, 1988, Lee, purportedly on behalf of the Wigod defendants, filed a motion to vacate or amend the findings of fact, conclusions of law, and judgment order. No grounds for the motion were stated and it was signed only by Lee. The court granted the defendants time to file a memorandum in support of their motion. At the June 17, 1988 hearing on the motion, both Lee and Sandra appeared. Lee represented, and Sandra concurred, that he had not previously informed his mother of the date of the trial so as to "protect" her. The memorandum in support of defendants' motion, signed by Lee but purportedly on behalf of the other Wigod defendants as well, asserted a variety of reasons for their failure to appear at trial, including that Lee was suffering from an unspecified illness (described by Lee at the hearing as anxiety attacks). Lee professed that he was unaware that a judgment would be entered when he failed to appear; he had assumed the trial would be rescheduled. Moreover, he repeated that he had not informed Sandra of "recent developments in this case" and claimed that Sandra was unaware of the trial until June 5. Tr. 6 at 2, 8. Lee also argued that a reduction in damages was justified even if the court refused to vacate the judgment. On October 4, 1988, the court denied the Wigod defendants' motion. The court concluded that no grounds existed for vacating or amending the judgment under either Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure.
 
 
 13
 On October 17, 1988, Lee moved for reconsideration of the court's decision to deny the motion to vacate. Sandra also filed her own motion to vacate or amend the judgment against the Wigod defendants. The court denied both motions. The Wigod Defendants now appeal the May 20, 1988 judgment and the October 4, 1988 order denying their motions to vacate or amend the judgment.
 
 II. Analysis
 A. Withdrawal of Counsel
 
 14
 The Wigod defendants contend that the district court improperly granted their counsel leave to withdraw from the case. We have noted before that the grant or denial of an attorney's motion to withdraw is a matter within the sound discretion of the district court and may be reversed only when that court has abused its discretion. See Washington v. Sherwin Real Estate, Inc., 694 F.2d 1081, 1087 (7th Cir.1982).
 
 
 15
 As we already noted, the district court denied counsel's first two motions to withdraw because they were based on fee disputes. The court granted the third motion, however, because the attorney-client relationship had deteriorated to the point that neither Lee nor his attorneys could work together. Counsel was not permitted to withdraw simply because of the Wigod defendants' inability to pay attorney's fees.[5] In Sherwin, we held that counsel's motion to withdraw, based on deteriorated communications with his client, was properly granted. Id. at 1088. Withdrawal in the present case was even more compelling than it was in Sherwin. The tensions between Lee and the defendants' attorneys not only impeded the attorneys' efforts to assist their client, but also caused the client himself to have "serious reservations about continuing to use [counsel]." Tr. 3 at 5.[6]
 
 
 16
 We consider it important that, when the motion was granted, Lee was present, made no objection, and fully consented to the withdrawal.[7] In addition, before granting the motion, the court alerted Lee to the seriousness of proceeding pro se. Lee assured the court that he understood "the consequences and grave nature" of the situation and indicated that he was "trying to search out other counsel." Tr. 3 at 9-10. We believe the court acted properly within its discretion in granting counsel's motion to withdraw.
 
 B. Entry of Judgment
 
 17
 The Wigod defendants next contend that the district court erred in entering a default judgment against them. Contrary to defendants' characterization, we believe the court's judgment rested on the merits of the case and, thus, was not a default judgment. On the day of trial, after waiting approximately forty-five minutes for the defendants to appear, the court noted for the record that the Wigod defendants "have not appeared and the matter is now treated as in default for failure to appear at trial." Tr. 5 at 4. Nevertheless, the court did not enter a default judgment. Instead, it required the plaintiff to "prove up the claims" against the Wigod defendants. Id. Although adopting the uncontested facts in the pretrial order, the court informed plaintiff's counsel that the uncontested facts did not supply sufficient information on all the contested issues.[8] Therefore, the court required the plaintiff to present evidence on various issues involved in the case. After hearing that evidence and relying on the stipulated, uncontested facts and exhibits, the court entered judgment for the plaintiff and against the Wigod defendants. The court's memorandum opinion expressly noted that the judgment was not based on the Wigod defendants' failure to appear at trial; rather, it was based on the evidence presented at trial and the uncontested facts. Accordingly, we believe the court used the word "default" in a descriptive sense, describing the Wigod defendants' conduct in failing to appear for trial, and not as a legal term of art, describing the type of judgment that the court would enter.
 
 
 18
 Our belief that the court's judgment was one based on the merits is bolstered further by the type of proceeding employed by the court. Federal Rule of Civil Procedure 55 governs default judgments in federal court. It authorizes both the clerk of the court and the court itself to enter a default judgment if certain requirements are met. See Fed.R.Civ.P. 55(b). A prerequisite to a court entering a default judgment is that the non-defaulting party must make "application for the judgment." Fed.R.Civ.P. 55(b)(2). The plaintiff in this case made no such application. Moreover, before the court could have entered a default judgment against the Wigod defendants, Rule 55(b)(2) mandates a hearing on the application and three days written notice to the non-defaulting party before the hearing. The court neither held a hearing nor required notice of the application for judgment. Thus, the judgment by the court did not resemble what is commonly known as a default judgment. See generally 10 C. Wright A. Miller & M. Kane, Federal Practice and Procedure Sec. 2684 (1983). Hence, the court's judgment was not a default judgment, but one based on the merits. Cf. Bass v. Hoagland, 172 F.2d 205, 209-10 (5th Cir.) (district court did not enter default judgment when defendant who previously filed an answer denying plaintiff's complaint failed to appear for trial, and plaintiff was required to prove his case at the trial), cert. denied, 338 U.S. 816 (1949). More fundamentally, as described above, the court noted the defendants' "default" and then immediately required the plaintiff to provide evidence in order to establish her right to relief.
 
 
 19
 Moreover, the Wigod defendants cannot contend seriously that they were without notice of the pending trial. The court's May 28, 1987 order notified the defendants that the case had been set on the trial call and that they would be given a three or four day telephone notice of the trial date. The defendants had nearly one year from that date and fifteen months from the time their former counsel withdrew to retain new counsel and prepare for trial. During that time, the Wigod defendants did little to advance the case. On April 25, 1988, the court informed the Wigod defendants that trial was set for May 2, 1988 at 10:00 a.m. On April 29, 1988, Lee presented a motion, purportedly on behalf of himself and the other Wigod defendants, requesting a delay in the trial date on various grounds. The court denied the motion and informed Lee that the trial would be held Monday morning, May 2, 1988, as scheduled. The record plainly establishes that Lee had notice of the trial date.[9]
 
 
 20
 Moreover, Sandra had notice of the trial date. There is no claim that Sandra was unaware that her counsel was granted leave to withdraw. After counsel withdrew, Lee filed all pleadings, appeared in court, and received service on behalf of all the Wigod defendants, including Sandra.[10] At no time, prior to Lee's motion to vacate or amend the judgment, did Lee tell the court that he had not been communicating with his mother. The court found that Sandra made no attempt to represent herself in court and instead relied on her son's presence at various status hearings. Indeed, Sandra never provided her address and telephone number to the clerk of the court. Furthermore, Sandra was aware that the case was proceeding; on May 28, 1987, almost a year before the trial, she signed the final pretrial order which expressly stated that the case was awaiting trial. As a party to a lawsuit, Sandra was required to take notice of all proceedings, whether proceeding pro se or being represented by counsel. See Texas Gulf Citrus & Cattle Co. v. Kelley, 591 F.2d 439, 440-41 (8th Cir.1979). We agree with the district court that there is no violation of fundamental fairness or due process when a party who is properly notified that a suit has begun never takes the action necessary to ensure that she will receive further notices.
 
 
 21
 The Wigod defendants also contest the court's denial of their motion to continue the trial. The standard by which we review the district court's decision is for abuse of discretion. See Schneider Nat'l Carriers, Inc. v. Carr, No. 89-1679, slip op. at 7 (June 8, 1990); United States v. Dougherty, 895 F.2d 399, 405 (7th Cir.1990). The motion was based on a variety of reasons previously identified in this order. The court found these reasons unpersuasive. Contrary to the defendants' contention, the court did articulate the basis for denying the continuance. At the hearing on the motion, the court noted the longevity of the case on the court's calendar, the fact that defendants voluntarily released their counsel, and the inevitability of the defendants having to "come to grips with the case." Tr. 4 at 6-7. Moreover, the court found that both Lee and Sandra's conduct "contributed to delays in this case." R. 94 at 2. In view of these facts, the time the defendants had to prepare their defense, and their awareness of the trial date, we conclude that the court properly exercised its discretion in denying the continuance.
 
 C. Motion to Alter or Amend
 
 22
 The Wigod defendants' final contention is that the district court erred in denying their motion to vacate or amend the judgement. A litigant who seeks relief from a judgment, depending upon the time and reasons for reconsideration, may file a motion to alter or amend the judgment under Rule 59(e) or to vacate pursuant to Rule 60(b). Under both rules we review the district court's decision by the abuse of discretion standard; however, depending upon which rule serves as the basis of the motion, the scope of our review will vary. Compare Petru v. City of Berwyn, 872 F.2d 1359, 1361-62 (7th Cir.1989) (appeal from a denial of a Rule 59(e) motion is treated as an appeal from the judgment itself) with McLaughlin v. Jung, 859 F.2d 1310, 1312 (7th Cir.1988) (denial of Rule 60(b) motion reviewed pursuant to district court's decision not to reopen or set aside judgment). Since the defendants' motion to vacate or amend the judgment failed to specify whether it was brought under Rule 59(e) or Rule 60(b), we initially must make that determination.[11]
 
 
 23
 This circuit has adopted the rule that "all substantive motions served within 10 days of the entry of judgment will be treated as based on Rule 59...." Charles v. Daley, 799 F.2d 343, 347 (7th Cir.1986) (citing Harcon Barge Co. v. D & G Boat Rentals, Inc., 784 F.2d 665 (5th Cir.1986) (en banc)). The district court's judgment was entered on May 25, 1988, and defendants' motion was filed on May 31, 1988, less than ten days after entry of judgment.[12] Thus, we treat the defendants' motion as one based on Rule 59 and apply the abuse of discretion standard. See Petru, 872 F.2d at 1361.
 
 
 24
 The Wigod defendants' motions to alter or amend a judgment "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." Federal Deposit Ins. Corp. v. Meyer, 781 F.2d 1260, 1268 (7th Cir.1986) (citing Keene Corp. v. International Fidelity Ins. Co., 561 F.Supp. 656 (N.D.Ill.1982), aff'd, 736 F.2d 388 (7th Cir.1984)). Because the errors now raised before us were not brought to the attention of the district court, either at trial (when the defendants failed to appear) or in their motion to alter or amend the judgment, these matters are not properly before us.[13]
 
 Conclusion
 
 25
 For the foregoing reasons, we affirm the district court's judgement of the district court against the defendants and its denial of their motion to vacate or amend the judgment.
 
 
 26
 AFFIRMED.
 
 
 
 *
 The Honorable Barbara B. Crabb, Chief Judge for the Western District of Wisconsin, is sitting by designation
 
 
 [1]
 The facts are derived largely from the uncontested facts stipulated to in the final pretrial order signed by all parties
 
 
 [2]
 In light of the numerous Wigods involved in this case, we generally refer to the parties by their first names
 
 
 [3]
 We note in passing that a pro se litigant cannot represent another party. See 28 U.S.C. Sec. 1654 (1989); In re Stevens, 108 Bankr. 191, 193 (Bankr.N.D.Ill.1989). However, as we explain in the following paragraphs, no reversible error was committed here. While Lee was designated for the receipt of all service of process, Sandra Wigod did participate in the litigation. She signed the pre-trial order, had notice that the matter was placed on the trial docket, and appeared at the Rule 59 hearing
 
 
 [4]
 Prior to this extension, the court, at the hearing on counsel's motion to withdraw, had extended the time for filing the final pretrial order to March 1987
 
 
 [5]
 At the hearing on counsel's motion to withdraw, the following exchange occurred:
 THE COURT: Mr. Wigod, I indicated before that the fact that bills weren't paid was not grounds to withdraw. However, if the attorney/client relationship has deteriorated to the point where the parties are unable to work together, I could reconsider.
 Are you telling me that it has reached that point?
 MR. WIGOD: I feel we have.
 Tr. 3 at 9.
 
 
 [6]
 By Lee's own admission his conversations with counsel had become so "hostile" that he was no longer "comfortable with their representation." Tr. 3 at 8
 
 
 [7]
 See Sherwin, 694 F.2d at 1088 ("A finding of abuse of discretion is less likely where the clients do not object to or express any disagreement with their attorney's request for permission to withdraw.")
 
 
 [8]
 It is clear from the following instructions to plaintiff's counsel that the court did not simply rubber stamp plaintiff's allegations or claims:
 THE COURT: The uncontested facts do not, however, supply the Court with sufficient information concerning the claimed jewelry, nor do the uncontested facts fully relate all of the other financial claims which are asserted in this case.
 So, counsel, you may call your client to the witness stand and proceed to establish, if you can, what other claims are available to the plaintiff.
 Tr. 6 at 4-5.
 
 
 [9]
 Lee's assumption that the court would simply reschedule the trial is unpersuasive. At the hearing on the motion for a continuance of the trial the court mentioned several times that the case would proceed to trial as scheduled. Moreover, if Lee assumed the court would reschedule the trial, his motion to continue the trial would have been unnecessary
 
 
 [10]
 At the February 18, 1987 hearing on counsel's motion to withdraw, Lee stated as follows:
 MR. KANNER: Will Mr. Wigod be designated as an individual to receive all service in the interim?
 THE COURT: Well, Mr. Wigod is representing, as I take it, himself and his family at this point, and his corporation, is that right?
 MR. WIGOD: Yes, Sir.
 THE COURT: And until counsel enters an appearance you may serve Mr. Wigod.
 Tr. 3 at 12.
 
 
 [11]
 The district court considered the motion under both Rule 59(e) and 60(b) and found no basis for relief under either rule
 
 
 [12]
 After the motion was filed, the court granted the defendants time to file a memorandum in support of their motion
 
 
 [13]
 Even if the defendants had raised the challenges in their motion to alter or amend, a Rule 59(e) motion may not be used to introduce new arguments or evidence which could, and should, have been made prior to a judgment being entered. Federal Deposit Ins. Corp. v. Meyer, 781 F.2d 1260, 1268 (7th Cir.1986); see Weihaudt v. American Medical Ass'n., 874 F.2d 419, 425 (7th Cir.1989) (en banc) (argument asserted in 59(e) motion which previously could have been raised precluded on appeal); Publishers Resource, Inc. v. Walker-Davis Publications, Inc., 762 F.2d 557, 561 (7th Cir.1985) (new issues introduced on appeal to challenge summary judgment precluded). The Wigod defendants had an opportunity to appear at trial and offer their own evidence as well as object to the plaintiff's evidence. They chose not to do this. The defendants may not now, at this late date, challenge the evidence for the first time. In any event, our examination of the record suggests no ground for reversal under the applicable standard