**Karen L. COLE and Stacey E. Spiegel, Plaintiffs,**

v.

**ST. JOSEPH COUNTY, Mahlon Wise and Tom Borowski, Defendants.**

**No. 3:99CV0308RM.**

United States District Court, N.D. Indiana, South Bend Division.

July 10, 2000.

Michael C Kendall, Michael L Schultz, Kendall Law Office, Indianapolis, IN, for Karen L Cole, Stacey E Spiegel, plaintiffs.

Peter J Agostino, Anderson Agostino & Keller, South Bend, IN, for St Joseph County, Mahlon Wise, Individually and in his representative and official capacities as the Director of the Court Substance Abuse Program, Tom Borowski, Individually and in his representative and official capacities as the Director of Human Resources for St Joseph County, defendants.

## MEMORANDUM AND ORDER

MILLER, District Judge.

Karen L. Cole and Stacey E. Spiegel sue St. Joseph County, County Human Resources Director Tom Borowski, and Court Substance Abuse Program director Mahlon Wise, seeking compensatory, punitive, and declaratory relief for violations of the Due Process Clause and the First Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983; conspiracy pursuant to 42 U.S.C. § 1985; retaliation pursuant to 42 U.S.C. § 2000e; promissory estoppel; breach of contract; and violation of St. Joseph County Ordinance No. 39–97. The defendants seek summary judgment. Fed.R.Civ.P. 56.

A motion for summary judgment should be granted when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. In determining whether a genuine issue of material fact exists, "a trial court must view the record and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." To defeat a motion for summary judgment, the non-

moving party cannot rest on the mere allegations or denials contained in his pleadings, but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." However, neither presenting a scintilla of evidence, nor the mere existence of some alleged factual dispute between the parties or some metaphysical doubt as to the material facts, is sufficient to oppose a motion for summary judgment. The party must supply evidence sufficient to allow a jury to render a verdict in his favor.

*Robin v. Espo Engineering Corp.*, 200 F.3d 1081, 1087–1088 (7th Cir.2000).

### A.

Because defendants have moved for summary judgment, the court views the facts in the light most favorable to the plaintiffs and draws reasonable inferences in plaintiffs' favor. *See, e.g., DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987). The defendants may disagree with some of the things the court assumes to be true, but the question at this stage is not what the facts are, but rather what a jury could find the facts to be.

The Court Substance Abuse Program (CSAP) provides the St. Joseph Superior Court with the resources necessary to monitor court-referred drug and alcohol offenders and to ensure the offenders' compliance with court orders. In 1998, CSAP consisted of a director, an assistant director, six case managers, one coordinator of support services, a lab director, two lab assistants and three secretaries. Mr. Wise had been the director of CSAP since 1993; Ms. Cole and Ms. Spiegel were case managers. Ms. Cole worked for CSAP for 11 years and had applied for the CSAP director's position in 1994. Ms. Spiegel worked for CSAP as an intern from January 1995 to August 1995 and as an employee from December 1995 to May 22, 1998.

Ms. Cole and Ms. Spiegel didn't like Mr. Wise's management style. Ms. Cole's problems with Mr. Wise started a year or so after Mr. Wise became CSAP director.

It was at that time that he began to tell jokes sporadically that several women found offensive and changed rules regarding travel and training reimbursement. Other office irregularities that Ms. Cole perceived included personal use of the county van and disparate treatment between men and women regarding comp time, overtime, assignment of night work, timecard keeping, and county van use. Ms. Spiegel's problems with Mr. Wise generally mirrored Ms. Cole's; she also complained of not receiving a hepatitis shot at county expense and Mr. Wise's problems with her work attire.

Mr. Wise, in turn, had problems with Ms. Cole and Ms. Spiegel. He thought Ms. Cole undermined his authority with other staff members by accusing him of being on the take and telling other staff members to disregard his direction. He saw Ms. Cole and Ms. Spiegel as insubordinate and confrontational, and thought they refused to accept his authority as the CSAP director.

When in administering the day-to-day activities of CSAP, Mr. Wise referred to the St. Joseph County Human Resources Policies and Benefits Manual, which the county promulgated in 1997. The county ordinance adopting the manual specifically provides that "[n]othing herein is intended to constitute a contract of employment between the St. Joseph County government and any employee, including reference to introductory periods and standards and procedures for discipline." The county endorses a policy of progressive discipline, but the manual also recognizes that a supervisor may terminate without progressive discipline for conduct such as insubordination and possession of firearms on county property. The manual specifically provides that the "handbook does not constitute a contract or an offer to enter into a contract and nothing in the descriptions contained in this handbook confers any right to continued employment with St. Joseph County," and that it does not "form[ ] an expressed or implied contract

or promises that the policies discussed in it will be applied in all cases."

In May 1997, Tom Borowski met with CSAP employees to explain the policy manual. Ms. Cole and Ms. Spiegel understood Mr. Borowski to say, in response to concerns about the handbook's "at will" provision, that the county doesn't use employment at will. Ms. Spiegel complained to Mr. Borowski at that meeting about a 15–minute time clock rule Mr. Wise had initiated.

Ms. Cole remembers Mr. Wise telling offensive jokes as early as 1995, when she confronted him about the jokes and threatened him with a sexual harassment claim. She couldn't remember any specific incidents or jokes from 1995, and Ms. Cole and Ms. Wise agree that any offensive jokes were sporadic and didn't affect or interfere with their abilities to do their work. Ms. Cole and other case managers (but not Ms. Spiegel) also told offensive jokes at work, but none as offensive as the ones Mr. Wise told. Ms. Cole and Ms. Spiegel recall two particularly offensive and gross jokes Mr. Wise told in early 1998, one just before a staff meeting. Some of the employees complained about the jokes among themselves, but no one complained to Mr. Wise (other than Ms. Cole saying something once in 1995) or anyone else in the chain of command until Ms. Spiegel complained to Judge Chamblee in April 1998 and to Mr. Borowski in May 1998 about the joke told at the staff meeting. During a May 1998 confrontation between Ms. Cole and Mr. Wise about mileage reimbursement, Ms. Cole again threatened to "get [Mr. Wise] on sexual harassment" because of the staff meeting joke.

When Mr. Wise came to CSAP, he was told that he was entitled to a vehicle and that he could choose a car or a van as long as his choice was within cost restraints. Mr. Wise chose a van, the use of which he believed to be a part of his compensation package from the county. At first, he let other CSAP employees use the van for CSAP business, but he discontinued that policy when he learned the van was used to transport employees to a tavern during a business trip. Later in 1996, Mr. Wise twice allowed CSAP employees to use the van for training sessions: once for a group of two men and a woman, and once for Jerry Clinton. Ms. Cole never asked to use the van, but she complained to Tom Borowski in May 1998 about men being able to use it when women weren't. Ms. Spiegel complained to Mr. Borowski in May 1998 and Judge Chamblee in April 1998 about Mr. Wise's trip to Florida.

Before Ms. Spiegel became a CSAP employee, CSAP staff received hepatitis vaccinations at county expense. After conferring with Pat Pasket of the county health department about the need of hepatitis vaccinations and concluding that CSAP employees didn't need them, Mr. Wise decided to eliminate the vaccinations from his budget. Ms. Spiegel had requested the vaccination on several occasions and Mr. Wise agreed to pay for half the cost, saying the whole cost was not in his budget. At the May 1997 meeting Ms. Spiegel complained to Mr. Borowski that she had worked at CSAP for a year and a half and still had not received a hepatitis vaccination after several requests to Mr. Wise. In or around September 1997, Ms. Spiegel wrote a letter to Mr. Wise and cited in that letter an OSHA standard that she believed required the vaccination. After Mr. Wise conferred with Mr. Borowski, Ms. Spiegel was provided the hepatitis vaccination at county expense.

Ms. Spiegel complained to Mr. Borowski in May 1997, and told him that she thought she would be punished for doing so, about the requirement the CSAP employees to clock in and out and that she was docked for being a minute late, but director Mr. Wise and his assistant Mr. Lawrence could come and go as they pleased. She thought it unfair that the two people in charge didn't have to account for their time the way the employees did. A few weeks after that meeting, Mr. Wise instituted a policy requiring everyone to punch a time clock

and sent out a memo to all CSAP employees warning that failure to punch out would result in a 15–minute dock for not properly punching in and out. Ms. Spiegel was not punished, but complained to Mr. Borowski in May 1998 that she thought her May 1997 complaint prompted Mr. Wise's 15–minute rule. Mr. Wise stopped the 15–minute rule a few days after the May 1998 meeting and had employees reimbursed for the docked time because not all employees had received or acknowledged in writing their receipt of the policy.

Ms. Spiegel complained to Judge Chamblee in April 1998 and to Mr. Borowski in May 1998 about what she felt was low morale in CSAP and the inequities in comp time. Ms. Cole complained to Ms. Bodle, Ms. Crone, and Mr. Borowski about what she considered inequitable distribution of comp time and an incident over timecards with Jerry Clinton. Ms. Cole and Ms. Spiegel generally thought comp time assignments were doled out more favorably to men in CSAP and specifically believed John Wolfe to be treated better. When Ms. Cole was in the senior position as case manager, she didn't receive comp time assignments working client groups in the evening as had her predecessor; instead, six hours of what Ms. Cole believed to be comp time that she was entitled to was given to Mr. Wolfe, another CSAP case manager. Ms. Cole complained about this perceived inequitable distribution, Ms. Spiegel did not.

Jerry Clinton received comp time for attending a training session; Ms. Cole was denied comp time for the same training. When Ms. Cole asked Mr. Wise about the discrepancy, she was told she had signed up too late (the next working day). Without authority or permission to do so, Ms. Cole pulled and copied Mr. Clinton's timecard and saw that he was not putting down on the card that he had taken lunch when case managers were told that they were not allowed to work through lunch. Ms. Cole confronted Mr. Wise at a staff meeting about what she perceived as unauthorized comp time for Mr. Clinton. She also took and copied Mr. Wise's timecard off the desk of Karen Spears, a supervisor and the coordinator of support services, who worked across the hall from her. Ms. Cole's handling of fellow employee's timecards created unrest in the workplace and a confrontation with Jerry Clinton for which Ms. Cole accepts partial responsibility.

A CSAP case manager's duties included taking client urine samples from CSAP to the St. Joseph County Juvenile Justice Center. The county reimbursed the CSAP employees at $.25 per mile for the trips. Because the individual trips were so short, Mr. Wise asked that the employees wait until they accrued at least $10.00 in mileage rather than cause the auditor's office the time and expense of processing smaller checks. When Ms. Spiegel demanded reimbursement, Mr. Wise told Donna Lewis (who was responsible for petty cash) to pay the mileage for all CSAP employees out of petty cash, which she did—except for Ms. Cole, whose reimbursement request was much greater than any other employee's and was too much to be paid from petty cash. Upon questioning Ms. Cole's mileage, Mr. Wise found that she was submitting reimbursement requests for five-mile trips that were actually less than half that, as were other CSAP employees.[1] Mr. Wise asked Ms. Lewis to collect what she had paid out of petty cash and to reimburse each CSAP employee for the proper mileage. Ms. Lewis told Ms. Cole her reimbursement wouldn't be at the level she expected.

Ms. Cole became angry and told Mr. Wise that he wasn't going to screw her financially again and that she was going across the street to see Mr. Borowski about the reimbursement issue. Mr. Wise told her that she'd be sorry if she did, then asked her to go with him on a trip in the van to verify the mileage. She refused to

1. At some point during the urine transport time, Mr. Lawrence estimated the round trip to be five miles. That was why the case managers claimed the five-mile rate.

go without a witness, so Mr. Wise asked Ms. Spiegel and Brenda Vander Werf to go with them. They drove the route and confirmed it was a little over two miles. While getting out of the van, Ms. Cole wondered aloud whether she could get worker's comp for hurting her knee getting out of the van. Mr. Wise told Ms. Cole that the incident wasn't over yet and that she was to watch the way she talked to him. Ms. Cole responded, "I can talk to you any way I want to. I could get you on sexual harassment."

Mr. Wise went directly to Mr. Borowski's office and asked him to investigate. Each van occupant was directed to submit written statements to Mr. Borowski. Between May 11 and May 19, 1998, Mr. Borowski went to CSAP and interviewed each of the witnesses to the mileage incident.

After conferring with Mr. Borowski, Mr. Wise fired Ms. Cole and Ms. Spiegel on May 22, 1998. In each termination memorandum, Mr. Wise said the employee was being terminated due to a lack of confidence in her ability to be a contributing, positive member of the staff.

### B.

The plaintiffs bring seven claims. Four are brought under federal law: violation of due process and violation of the first amendment (both brought under 42 U.S.C. § 1983), retaliation for complaining of unlawful gender discrimination (brought under the Civil Rights Acts of 1964 and 1991, 42 U.S.C. § 2000e), and conspiracy to violate their civil rights (brought under 42 U.S.C. § 1985). Ms. Cole and Ms. Spiegel also bring three claims under Indiana law: breach of contract, breach of a county ordinance, and promissory estoppel. The court begins its analysis with the federal claims.

■ To succeed on their claims under 42 U.S.C. § 1983, Ms. Cole and Ms. Spiegel must establish that a person acting under color of state law deprived them of a right secured by the Constitution or the laws of the United States. *See Larsen v.* *City of Beloit*, 130 F.3d 1278, 1282 (7th Cir.1997).

### 1.

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property," *Board of Regents v. Roth*, 408 U.S. 564, 569–570, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), so Ms. Cole and Ms. Spiegel must show that each had a property interest entitled to the Fourteenth Amendment's procedural protection. *See Moulton v. Vigo County*, 150 F.3d 801, 804 (7th Cir.1998); *Petru v. City of Berwyn*, 872 F.2d 1359, 1362 (7th Cir.1989). "An individual may have a property interest in continued employment," *Pleva v. Norquist*, 195 F.3d 905, 914 (7th Cir.1999) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–539, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)), but "not every employment situation creates an expectation of continued employment that rises to the level of a property interest protected by the Due Process Clause," *id.* (citing *Heck v. City of Freeport*, 985 F.2d 305, 311 (7th Cir.1993)).

■ "To have a property interest in a benefit [such as a job] a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. at 577, 92 S.Ct. 2701. State law determines whether a claimant has an employment-related property interest, *see Moulton v. Vigo County*, 150 F.3d at 804, which can be created either "by an independent source such as a state law securing certain benefits" or "by a clearly implied promise of continued employment," *Shlay v. Montgomery*, 802 F.2d 918, 921 (7th Cir.1986) (citation omitted); *see also Pleva v. Norquist*, 195 F.3d at 914; *Heck v. City of Freeport*, 985 F.2d at 310.

Ms. Cole and Ms. Spiegel contend that the county, Mr. Wise, and Mr. Borowski

deprived them of their Fourteenth Amendment right to due process by terminating them with out notice, opportunity to be heard, and progressive discipline. The defendants argue that Ms. Wise and Ms. Cole were "at will" employees under Indiana law and had no employment contract with St. Joseph County, so no property interest in continued employment existed. Ms. Cole and Ms. Wise don't dispute that without a contract, they have no due process claim. Instead, Ms. Cole and Ms. Spiegel argue that the policy manual's language created an enforceable employment contract or, if it did not do so, that Mr. Borowski's statements in the May 1997 meeting about the manual and the parties' past practices created a legitimate claim of entitlement to continued employment.

■ A property interest arises under Indiana law only when "an employment contract for a definite term exists and the employer has not reserved the right to terminate the employment relationship before the contract ends," and "an employee may usually not be terminated before the end of the specified term except for cause or by mutual agreement." *Moulton v. Vigo County*, 150 F.3d at 804. "When no definite or ascertainable term of employment exists, an employee is considered an employee at will and may be terminated at any time, with or without cause." *Id.* at 804–805 (citing *Orr v. Westminster Village North, Inc.*, 689 N.E.2d 712, 717 (Ind. 1997)).

■ The St. Joseph County policy manual and ordinance adopting the policy manual say that county employees (with a few irrelevant exceptions) are "at will" employees. The policy manual states that "County policies and practices with respect to any matter are not to be considered as creating any contractual obligation or as stating in anyway that termination will occur only for 'just cause'." In accordance with the policy manual's language, Ms. Cole and Ms. Spiegel held their case manager positions "at will" and had no proper-

ty interest protected by the Due Process Clause.

Ms. Cole and Ms. Spiegel urge the court to hold that notwithstanding that language, this policy manual is an employment contract. They cite *Orr v. Westminster Village North, Inc.*, 689 N.E.2d at 719–720, in which the Indiana Supreme Court considered but declined an opportunity to create a "handbook exception" to Indiana's employment-at-will doctrine. Because the Indiana Supreme Court didn't reject outright the possibility that some policy manual might constitute a unilateral employment contract, Ms. Cole and Ms. Spiegel say this court should do what the Indiana Supreme Court wouldn't do, and adopt a "handbook exception" for the state of Indiana. To do so would be inconsistent with the role of a federal district court looking to state law. This court's task is to determine what rights these employees had under Indiana law, not what might be better law for Indiana. Even if the court were to agree with the plaintiffs about what direction Indiana law should take (an issue the court needn't reach), it would be hard to conclude that Ms. Cole and Ms. Spiegel could have a legitimate expectation of continued employment or guaranteed progressive discipline because Indiana law wasn't what it should have been when the handbook was adopted in 1997.

■ Mr. Borowski's comments at the May 1997 meeting didn't provide Ms. Cole and Ms. Spiegel with a legitimate expectation of continued employment. Specific language of the policy manual allows "[a]lteration, modification, amendment or termination of the manual … only … through a written document signed by all members of the County commissioners and County Council." Unless the government body or official has authority to create a binding continuous employment contract, any purported contract of this kind is "null and void and cannot be used to create a property interest in the continued employment." *Pleva v. Norquist*, 195 F.3d at 915 (citing *Shlay v. Montgomery*, 802 F.2d 918,

921–922 (7th Cir.1986)). Nothing in the evidence suggests (and Ms. Cole and Ms. Spiegel don't argue) that Mr. Borowski had the authority to create a binding continuous employment contract with Ms. Cole and Ms. Spiegel. Mr. Borowski's representations can't create a property interest or an employment contract for Ms. Cole and Ms. Spiegel.

The defendants[2] are entitled to judgment as a matter of law on the due process claim.

### 2.

Ms. Cole and Ms. Spiegel claim that the defendants unlawfully retaliated against them by terminating Ms. Cole and Ms. Spiegel for complaining about Mr. Wise and inquiring about his practices in CSAP. Ms. Cole and Ms. Spiegel argue that these communications are protected by the First Amendment.

■■ "In order to establish a § 1983 claim based on the First Amendment, a plaintiff must demonstrate that (1) his conduct was constitutionally protected and (2) his conduct was a 'substantial factor' or 'motivating factor' in the defendant's challenged actions." *Thomsen v. Romeis,* 198 F.3d 1022, 1027 (7th Cir.2000) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *see also Johnson v. University of Wisconsin–Eau Claire,* 70 F.3d 469, 482 (7th Cir.1995)). Unless a § 1983 plaintiff can establish that the challenged action would not have occurred 'but for' the constitutionally protected conduct, she cannot prevail against a defendant "brimming over with unconstitutional wrath" against her. *See Johnson v. University of Wisconsin–Eau Claire,* 70 F.3d at 482 (quoting *Button v. Harden,* 814 F.2d 382, 383 (7th Cir.1987)). But a public employee's right to free speech is not absolute. When faced with a public employee's allegation of free speech infringement, the court must balance the employee's First Amendment interest against the gov-

ernment's interest, as an employer, in efficiently providing government services through its employees. *See Pickering v. Board of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). The defendant can still prevail if he can show by a preponderance of the evidence that he would have taken the same action even in the absence of the protected speech. *See Klunk v. County of St. Joseph,* 170 F.3d 772, 775 (7th Cir.1999) (citing *Mt. Healthy,* 429 U.S. at 286, 97 S.Ct. 568). "The plaintiff must carry the burden of proof for the first two elements; the government has the burden for the last two." *Id.; see also Glass v. Dachel,* 2 F.3d 733, 744 (7th Cir. 1993) (government must prove balancing test).

■ The defendants contend that Ms. Cole and Ms. Spiegel's claim misses the mark on both prongs of the of the *Mt. Healthy* test. The defendants say neither plaintiff engaged in protected speech, and if they did, their alleged protected speech was not the cause of their termination. Evaluating whether Ms. Cole's and Ms. Spiegel's speech dealt with a matter of public concern is a question of law that requires an examination of the "content, form, and context" of their statements "as revealed by the whole record." *Connick v. Myers,* 461 U.S. 138, 147–148 & n. 7, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *see also Johnson v. University of Wisconsin–Eau Claire,* 70 F.3d at 482; *Breuer v. Hart,* 909 F.2d 1035, 1037 (7th Cir.1990). The context and form of the speech are significant because without those factors, "every employment dispute involving a public agency could be considered a matter of public concern," *see Barkoo v. Melby,* 901 F.2d 613, 618 (7th Cir.1990), a result the law seeks to avoid, *see Connick v. Myers,* 461 U.S. at 148–150, 103 S.Ct. 1684.

Ms. Cole says she spoke on matters of public concern when she complained to Mr. Borowski on May 11, 1998, about the time-

---

**2.** Defendants Cole and Borowski also claim entitlement to qualified immunity with regard to the due process claim. Because the court finds no constitutionally protected property interest, the court need not address the qualified immunity defense.

cards, comp time issues, van use and her feeling that unethical or illegal things were happening in the CSAP office, when she complained to Mr. Wise about her concern regarding CSAP employee safety (having no uniformed escort to her car when she worked nights), when she spoke to Mr. Wise in 1995 or 1996 about his inappropriate comments and jokes, when she made a comment about workers' comp coverage for her knee when she was getting out of the van after the May 4, 1998 mileage trip, and when she told Mr. Wise after the mileage trip that she would charge him with sexual harassment.

Ms. Spiegel says she engaged in protected speech on matters of public concern when she complained in May 1997 (at the meeting about the policy manual) and on May 18 and/or 19, 1998[3] to Mr. Borowski about the time clock and pay issues (the 15–minute rule imposed by Mr. Wise, and Mr. Wise's practice of docking female employees' pay for being tardy for work while not docking the pay of males, being "screwed out of twenty hours of comp time," and not being paid for overtime), about Mr. Wise's inappropriate use of a county-owned van to take a personal trip to Florida, about that fact that she and other women at CSAP "were talking about going to the EEOC" regarding Mr. Wise's apparent problems dealing with women (offensive jokes and comments and his disapproval of her work attire), and about payment for her hepatitis vaccination. Ms. Spiegel also complained to Judge Chamblee about the van use and the time clock and pay issues. Ms. Spiegel didn't tell Mr. Wise of her meeting with Judge Chamblee or about the content of her May 1998 meeting with Mr. Borowski.

The court must decide, with respect to each of these communications, whether the communication is protected, and if so, whether a reasonable trier of fact could find that the communication was a substantial factor in the termination of Ms. Cole or Ms. Spiegel.

■ Ms. Cole's complaints about workplace security and Ms. Spiegel's complaints about the hepatitis vaccination are CSAP personnel issues. These complaints by public employee are "workplace speech," *Snider v. Belvidere Twp.*, No. 99–4102, 2000 WL 777779, at *4 (7th Cir. June 19, 2000)—complaints about personnel matters, not matters of public concern, and are not protected as such.

While the matter of possible unethical or illegal conduct by Mr. Wise in his management of CSAP might relate to a matter of public concern, Ms. Cole's and Ms. Spiegel's complaints to Ms. Crone, Ms. Bodle, Judge Chamblee, and Mr. Borowski bring no material insight to the general public about the quality of operations at CSAP. In terms of content, Ms. Cole's and Ms. Spiegel's speech merely disclosed their opinions that something was amiss in CSAP. In terms of context, the record is clear that Ms. Cole had difficulty getting along with Mr. Wise and both Ms. Cole and Ms. Spiegel strongly disagreed with Mr. Wise's management style and didn't like the way he ran the CSAP office; the complaints to Judge Chamblee and Mr. Borowski were statements made while Ms. Cole and Ms. Spiegel were undeniably unhappy with the Mr. Wise. Ms. Cole kept a record of what she felt were Mr. Wise's transgressions, a "boxful" of handwritten and typed notes, and went so far as to copy his timecard that she had taken, without permission or authority, off of a supervisor's desk. The record reveals no action against Mr. Wise by any of those to whom Ms. Cole and Ms. Spiegel complained, and Ms. Cole and Ms. Spiegel have presented neither arguments nor evidence to the contrary. Ms. Cole and Ms. Spiegel did not

**3.** It is unclear from the record whether Ms. Spiegel had one or two meetings with Mr. Borowski in May 1998. At one point in her deposition she said she had two meetings, one on May 18 and one on May 19 (deposition page 58, lines 23–24), but at other times, she speaks of only one May 1998 meeting ("the May '98 meeting with Tom Borowski") (deposition pages 30–31, lines 25, 1); the "98 meeting" (deposition page 38, line 16); "At our meeting. I believe that was May 18th or 19th of '98" (deposition page 45, lines 3–4).

treat these complaints as matters of public concern, because they did not state them publicly. *See Taylor v. Carmouche*, No. 99–3117, 2000 WL 675312, at *3 (7th Cir. May 24, 2000).

Ms. Cole and Ms. Spiegel claimed Mr. Wise discriminated against them in some manner because they were women. They accused him of what they saw as sexual harassment through offensive joke telling, and of discriminatory comp time and overtime allotment, van use, and enforcement of the 15–minute rule. Gender discrimination and sexual harassment in a county office are inherently matters of public concern, but the *Connick* "test requires us to look at the point of the speech in question: was it the employee's point to bring wrongdoing to light? Or to raise other issues of public concern, because they are of public concern? Or was the point to further some purely private interest?" *Linhart v. Glatfelter*, 771 F.2d 1004, 1010 (7th Cir.1985); *see also Marshall v. Allen*, 984 F.2d 787, 795 (7th Cir.1993); *Callaway v. Hafeman*, 832 F.2d 414, 417 (7th Cir.1987). The mere presence of a personal motive in complaining about gender discrimination and sexual harassment in a county office do not prevent the suit from being a matter of public concern. *See Auriemma v. Rice*, 910 F.2d 1449, 1460 (7th Cir.1990).

The court assumes that the sexual harassment and gender discrimination issues brought forth by Ms. Cole and Ms. Spiegel are matters of public concern. Ms. Cole's complaints to Mr. Borowski and Ms. Spiegel's complaints to Judge Chamblee and Mr. Borowski about Mr. Wise were designed to bring light to the offensive joke telling and the discriminatory policies that CSAP employees were subjected to and to put an end to them.

Ms. Cole was terminated within two weeks of making her complaints to Mr. Borowski and Ms. Spiegel was terminated within a week of complaining to Mr. Borowski and within a month of complaining to Judge Chamblee about the van use, the discriminatory policies and the offensive

joke telling. Mr. Wise said in his deposition that he and Mr. Borowski conferred about the termination decision and that the decision to fire Ms. Cole and Ms. Spiegel was based on the recommendation of Mr. Borowski, who had just heard the complaints of gender discrimination and sexual harassment and personal van use from Ms. Cole and Ms. Spiegel. A reasonable trier of fact could find that their complaints (assumed to be matters of public concern) were a factor in their termination.

It remains to balance the public employees' rights to free speech with the government's interest in efficiently providing government services. *See Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). The court agrees that the *Pickering* balancing test leads to the conclusion that CSAP's interest in operating its program and serving its public function outweighs the Ms. Cole's and Ms. Spiegel's First Amendment interests, and this court agrees. The factors to be considered in balancing the interests are

(1) whether the statement would create problems in maintaining discipline by immediate supervisors or harmony among co-workers; (2) whether the employment relationship is one in which personal loyalty and confidence are necessary; (3) whether the speech impeded the employee's ability to perform his daily responsibilities; (4) the time, place, and manner of the speech; (5) the context in which the underlying dispute arose; (6) whether the matter was one on which debate was vital to informed decision making; and (7) whether the speaker should be regarded as a member of the general public.

*Klunk v. County of St. Joseph*, 170 F.3d 772, 776 (7thCir.1999) (citing *Jefferson v. Ambroz*, 90 F.3d 1291, 1297 (7th Cir.1996)).

A complaint that accuses a boss of treating some employees more favorably than others can only create problems in maintaining discipline and in maintaining harmony among co-workers. Evidence of dis-

ciplinary problems come from Ms. Cole's statement that she could talk to Mr. Wise any way she wanted to and in Ms. Cole's and Ms. Spiegel's refusal to provide home telephone numbers for CSAP on-call purposes. Ms. Cole also acknowledged her part in co-worker disharmony with Mr. Clinton when she made an office issue out of comp time reported on his timecard—comp time she claims he received based on Mr. Wise's discriminatory policy. The defendants point to evidence that the case managers worked in concert with probation officers and reported to the superior courts, which indicate that the case manager position in the drug and alcohol offender program is one in which loyalty and confidence are necessary to the credibility of the CSAP program. The triggering dispute was about mileage reimbursement—a dispute in which Ms. Cole was very loud and, as it turned out, quite wrong. The matters of personal van use, discriminatory comp time and overtime policies, and offensive joke telling are not matters on which debate is vital to informed decision making by public officials.

In addition, Mr. Wise articulated several reasons as to why he terminated Ms. Cole—she was a chronic complainer, she was insubordinate, she was uncooperative, she meddled in other employee's time keeping causing unrest in the office. In addition, Mr. Wise stated that she had essentially stopped working a year earlier and her files were in terrible shape. Mr. Wise stated that he terminated Ms. Spiegel for insubordination and her unwillingness to accept his supervision—including slamming his door in response to his disapproval of her work attire and refusing to provide a home phone number. Ms. Cole and Ms. Spiegel cite no evidence to rebut these reasons, but state that Mr. Wise took no action regarding their insubordination short of termination. Accordingly, the court grants summary judgment as to the First Amendment claims.[4]

**3.**

Count 3 of the complaint alleges a conspiracy pursuant to 42 U.S.C. § 1985 among the defendants "to develop and implement a plan of retaliation against the plaintiffs and to stifle or chill her exercise of her First Amendment right to petition the government for redress of grievances." The defendants sought summary judgment on this claim, and the plaintiffs did not respond to the defendants' argument. The absence of argument in support of that claim in response to the defendants' summary judgment motion concedes the claim. *See Sattar v. Motorola, Inc.,* 138 F.3d 1164, 1168 (7th Cir.1998) (the purpose of summary judgment is to refine the case sufficiently so that both parties know the precise injuries alleged). The summary judgment briefs narrowed the issues and Ms. Cole's and Ms. Spiegel's conspiracy claim was not among the issues discussed in their response.

**4.**

Title VII forbids and provides a remedy for an employee when an employer retaliates against her for voicing opposition to "any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e–3(a). To establish a prima facie case of Title VII retaliation, Ms. Cole and Ms. Spiegel must establish that (1) they engaged in statutorily protected expression, (2) they suffered an adverse action by her employer, and (3) there is causal link between her opposition to unlawful discrimination and her termination. *See Sweeney v. West,* 149 F.3d 550, 555 (7th Cir.1998); *Gleason v. Mesirow Financial, Inc.,* 118 F.3d 1134, 1146 (7th Cir.1997).

The defendants contend that the plaintiffs' claim of Title VII retaliation misses on two of the elements of the prima facie case. First, the defendants argue Ms. Cole's and Ms. Spiegel's complaints were not complaints concerning conduct prohib-

---

4. As with the Due Process claim, defendants Cole and Borowski also argue that they are entitled to qualified immunity with regard to this claim. Because the court finds the plain-

tiffs would have been terminated despite their protected speech, the court will not address the qualified immunity defense.

ited by Title VII, but were complaints about Mr. Wise's management style. Although each related an instance of what they believed to be a male co-worker receiving more favorable treatment, the defendants argue that Ms. Cole and Ms. Spiegel didn't articulate how such treatment was the result of being male as opposed to some other reason. Second, the defendants argue that no causal link between the protected activity and the termination exists: some of the complaints were too remote to have been factors in the termination decision, other complaints were unknown to Mr. Wise when he made the termination decision, and Ms. Cole and Ms. Spiegel cannot prove they were terminated as a result of making complaints rather than for insubordination and bad attitude.

■ The practice complained of need not necessarily be illegal under Title VII to support a retaliation; a cause of action is stated so long as plaintiff possessed a good faith and reasonable belief that the underlying challenged actions of the employer violated the law. *See Sweeney v. West,* 149 F.3d at 554. It is undisputed Ms. Cole complained to Mr. Borowski and Ms. Spiegel complained to Mr. Borowski and Judge Chamblee about what they believed and perceived to be a discriminatory enforcement of a 15–minute timecard policy, comp time policy, and overtime policy (alleged gender discrimination), and it is undisputed Ms. Spiegel complained about Mr. Wise's telling of offensive jokes (alleged sexual harassment). Whether Mr. Wise actually enforced the timecard, comp time, or overtime policies in a discriminatory manner or whether the offensive jokes constituted sexual harassment is not the issue; Ms. Cole's and Ms. Spiegel's perceptions and beliefs of discriminatory conduct and Ms. Spiegel's perception of sexual harassment by Mr. Wise about which they complained to Mr. Borowski and Judge Chamblee did not have to be right, they only had to be complaints made in good faith be a protected activity.

■ Despite the defendants' argument to the contrary, the record when reviewed in the light most favorable to Ms. Cole and Ms. Spiegel raises a genuine issue of triable fact as to the first element of a prima facie case—that Ms. Cole and Ms. Spiegel (or a reasonable person in their stead) could have come to a rational conclusion that Mr. Wise's enforcement of his comp time, overtime, and timecard policies and his offensive joke telling were discriminatory employment practices and that complaining about the same was a protected activity. A complaint about discrimination may be too opaque for a superior to perceive, *see, e.g., Miller v. American Family Mut. Ins. Co.,* 203 F.3d 997, 1007–1009 (7th Cir.2000), and no retaliation claim exists when the decision-maker didn't know an accusation of discrimination had been made, *see Pryor v. Seyfarth, Shaw, Fairweather & Geraldson,* 212 F.3d 976, 980 (7th Cir.2000); *Maarouf v. Walker Mfg. Co.,* 210 F.3d 750, 755–756 (7th Cir.2000). A jury might find that Mr. Wise was the decision-maker, and that Mr. Wise was not aware of what Mr. Spiegel and Ms. Cole were saying about him, but the court cannot say that the summary judgment record requires such findings.

■ The defendants argue that the record does not allow an inference that the plaintiffs were fired for complaining about perceived gender discrimination or harassment. Ms. Cole and Ms. Spiegel point to the timing of their complaints and termination: they were each fired on May 22, less than three weeks after Ms. Cole told Mr. Wise she could "get" him on sexual harassment charges, and perhaps as few as three days after Ms. Spiegel's conversation with Mr. Borowski.

■ An inference of retaliatory motive is permissible when the adverse employment action follows on the heels of the activity protected by Title VII. *See Filipovic v. K & R Express Systems, Inc.,* 176 F.3d 390, 398–399 (7th Cir.1999). The inference is unquestionably permissible when adverse action follows protected ac-

tivity by a week or less, but may be impermissible when a month's span stands alone. *See Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 746 (7th Cir.1999); *Eiland v. Trinity Hosp.*, 150 F.3d 747, 753 (7th Cir.1998); *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 797 & nn. 5–6 (7th Cir.1997). Longer delays amount to evidence against a retaliatory motive. *See Johnson v. Univ. of Wisconsin–Eau Claire*, 70 F.3d 469, 480 (7th Cir.1995). The plaintiffs each have shown sufficient temporal proximity to make out a prima facie case of causal relationship, and so have made a prima facie case of retaliation.

■ The inquiry, though, does not stop there. If a Title VII retaliation plaintiff succeeds in making out a prima facie case, the defendant "has the burden to produce a legitimate (nondiscriminatory) reason for firing her. If it succeeds in doing so, then [the plaintiff] has the burden to prove that [the defendant's] proffered reasons were not true—that they were a mere pretext for retaliating against her." *Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1007 (7th Cir.2000). The defendants have offered legitimate, non-discriminatory reasons: Mr. Wise says he fired Ms. Cole because she was a chronic complainer, insubordinate, uncooperative, disruptive of the office, a poor worker, and a terrible record-keeper. Mr. Wise says he fired Ms. Spiegel for insubordination and unwillingness to accept his supervision. The plaintiffs, then, shoulder the burden of coming forth with evidence sufficient to allow a trier of fact to find that those were not the true reasons for the firings, but instead are pretexts for retaliation. *See Richter v. Hook–SupeRx, Inc.*, 142 F.3d 1024, 1030 (7th Cir.1998).

The plaintiffs present nothing to indicate that Mr. Wise was wrong about their insubordination, lack of cooperativeness, and so on. Of course, they don't have to prove themselves to have been model employees; they simply have to prove that the reasons Mr. Wise gives were not the true reason they were fired. *See, e.g., Reeves v. Sanderson Plumbing Prods., Inc.*, —— U.S.

——, ——–——, 120 S.Ct. 2097, 2108–2109, 147 L.Ed.2d 105 (2000). Still, they must present something more than the brevity of time between their protected activity and their discharges. The " 'timing of the complaints, standing alone, does not create a genuine issue as to causal connection' where the plaintiff 'could not prove that she was terminated because of her sexual harassment complaint rather than for poor work performance.' " *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 321 (7th Cir.1992). A prima facie case is not enough to survive summary judgment. *See, e.g., Silk v. City of Chicago*, 194 F.3d 788, 800 (7th Cir. 1999) ("Even if the Sergeant had demonstrated his prima facie case, however, the City's reason for refusing his secondary employment was legitimate and nondiscriminatory, and Sergeant Silk has offered no evidence that the reason was pretextual."); *Sanchez v. Henderson*, 188 F.3d 740, 745–747 (7th Cir.1999) (pretext analysis doomed retaliation claim even though discharge occurred day after EEOC investigator came to employment site to inquire into charge). They have not carried that burden.

Ms. Cole reports that Mr. Wise told her that she "would be sorry" if she went to Mr. Borowski. The summary judgment record doesn't indicate exactly when that was said, so it is difficult to determine how that statement would prove pretext. While uncertainty usually works against the summary judgment movant, *see, e.g., Pryor v. Seyfarth, Shaw, Fairweather & Geraldson*, 212 F.3d at 980, it can work against the motion's opponent who bears the burden of proof at trial, and so bears the summary judgment burden of coming forth with enough evidence to satisfy that burden of proof at trial, *see, e.g., Aviles v. Cornell Forge Co.*, 183 F.3d 598, 603 (7th Cir.1999).

The summary judgment record also doesn't disclose much of the context in which the statement was made. Viewing things in the light most favorable to the

plaintiffs, the statement would have been made at or near the time of the eruption of the mileage reimbursement issue. Mr. Wise reported to Mr. Borowski that Ms. Cole told him she was going across the street on "[t]his mileage reimbursement shit," which would strip probative value (on the retaliation issue) from any responsive statement by Mr. Wise about her being sorry. What Mr. Wise says about the matter is hardly dispositive of his own summary judgment motion, of course (except to the extent Mr. Borowski is assumed to have been the decision-maker), but his statement is pertinent in deciding whether the plaintiffs have met their burden of coming forth with evidence sufficient to satisfy their burden on pretext.

In their statement of genuine issues of fact, the plaintiffs say, "in fact, Karen Cole told Wise that she 'could have gone across the street in the past with valid charges of sexual harassment, talking out of both sides of [Wise's] mouth and straight out lying to her and other staff.' ... At that point, Wise directly threatened Cole with retaliation if she complained to Borowski, saying that if she went to Borowski, she'd be 'sorry.'" The court cannot locate support for those statements in the cited portions of the record, but accepting them as accurate undercuts the retaliation claim: Ms. Cole is described as making a statement, not opposing an employment practice made unlawful by Title VII, but rather reciting past forbearance from report an assumed Title VII violation. The retaliation provisions of Title VII protect statements of the former sort, rather than the latter. *See* 42 U.S.C. § 2000e–3(a). "[T]he very purpose of the anti-retaliation provision is to prevent Title VII claims from being deterred," *Heuer v. Weil–McLain,* 203 F.3d 1021, 1023 (7th Cir. 2000), and the statement described by the plaintiffs has nothing to do with such a purpose.

The plaintiffs also point to what they see as Mr. Wise's false statements about whether he knew of their statements to others about what they saw as Title VII violations. Proving falsity of employer's statement of reasons for the discharge suffices to get over the pretext hurdle, *see Reeves v. Sanderson Plumbing Prods., Inc.,* —— U.S. ——, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), so evidence from which the jury could find the decision-maker's statement to be false would seem to suffice to survive summary judgment, but these things are so only if the false statement relates to the reason for the discharge. And the statements to which the plaintiffs point to relate only to whether Mr. Wise knew of the allegations.

■ In the final analysis, the plaintiffs haven't come forth with anything other than simple temporal proximity to meet their burden of showing pretext. They have no direct evidence of retaliatory motive, and so must rely on the indirect method of proof. Since they cannot meet their burdens under that method, no reasonable trier of fact can infer a retaliatory motive from the summary judgment record, and the defendants are entitled to judgment on the retaliation claim as a matter of law.[5]

5.

■ When a federal district court has resolved the federal claims in a case before it, the court generally is to dismiss the state law claims without prejudice. *See Kennedy v. Schoenberg, Fisher & Newman, Ltd.,* 140 F.3d 716, 727–728 (7th Cir.1998); *Robles v. City of Fort Wayne,* 113 F.3d 732, 738 (7th Cir.1997). There are exceptions to that approach, *see Groce v. Eli Lilly & Co.,* 193 F.3d 496, 500–501 (7th Cir.1999), but the court doesn't be-

---

**5.** Although the court has spoken in terms of "the defendants," Mr. Wise and Mr. Borowski would have been entitled to summary judgment on this claim in any event because a supervisor cannot be held liable in his individual capacity under Title VII, *see Silk v. City of Chicago,* 194 F.3d 788, 797 n. 5 (7th Cir. 1999).

lieve this is a case in which it should vary from the customary dismissal without prejudice. As was discussed with reference to the federal due process claim, Ms. Cole and Ms. Spiegel seek to modify Indiana law on an employee handbook as a contract. Federal court is not the appropriate forum in which to modify existing state law, see *Frank v. Hadesman and Frank, Inc.*, 83 F.3d 158, 162 (7th Cir.1996); see also *Home Valu, Inc. v. Pep Boys, Manny, Moe and Jack of Delaware, Inc.*, 213 F.3d 960, 965 (7th Cir.2000), but this isn't the forum to which Mr. Cole and Ms. Spiegel originally turned: they filed their case in state court, and the defendants removed it. Under these circumstances, the court believes it is appropriate simply to dismiss the remaining state law claims without prejudice.

### C.

For the reasons stated above, the court GRANTS the defendants' motion for summary judgment [Docket No. 21] as to the federal law claims; DISMISSES WITHOUT PREJUDICE the state law claims; and VACATES the July 11, 2000 final pretrial conference and the July 17, 2000 trial.

SO ORDERED.